**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
LEE R. ELLIS,

                                  Plaintiff,

                    - against -

CYGNUS ENTERPRISES, LLC d/b/a
THE MILL HOUSE INN,

                                Defendant.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 11-771 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      This case involves claims that Defendant Cygnus Enterprises, LLC d/b/a The Mill House Inn ("The Mill House Inn" or "Defendant") violated the Americans with Disabilities Act of 1990 (the "ADA") as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101, *et seq.*, and the New York State Human Rights Law ("NYSHRL") based upon its treatment of the Mill House Inn's former employee, Lee Ellis ("Ellis" or "Plaintiff"). Ellis allegedly suffers from depressive anxiety disorder. Plaintiff moved under Federal Rule of Civil Procedure 12(f) to strike Defendant's Sixth Affirmative Defense concerning Plaintiff's fitness for employment with Defendant on the grounds that the defense is without merit, has no application to this proceeding, and will unnecessarily delay the prosecution of this matter. DE 8. Defendant objected to the motion [DE 9] and Plaintiff filed a reply [DE 10]. This matter was referred to me by District Judge Feuerstein for a Report and Recommendation. Having considered the parties' submissions and the applicable case law, I respectfully recommend to Judge Feuerstein that Plaintiff's motion to strike be GRANTED in part and DENIED in part.

## I. PRELIMINARY STATEMENT

In its Amended Answer to Plaintiff's Complaint, Defendant asserted the following as a Sixth Affirmative Defense:

> 39. The plaintiff is not entitled to any of the relief demanded in the complaint because he is not fit to be employed by the defendant under any circumstances.
>
> 40. On August 4, 2010 the plaintiff sent the defendant an e-mail in which he identified himself as "Theodore Kazinsky."
>
> 41. This e-mail was troubling to the defendant because, upon information and belief, Theodore Kazinsky [Kacyznski] is also known as the Unabomber and a person who engaged in a mail bombing spree that spanned nearly 20 years and killed three people and injured many others. The plaintiff's e-mail was therefore interpreted as a threat to The Mill House Inn and to its managing member, Gary E. Muller.
>
> 42. The plaintiff has also threatened to file complaints against The Mill House Inn with regulatory agencies unless his demands for the payment of money were met.
>
> 43. The plaintiff also refused to vacate the manager's residence at The Mill House Inn unless he received a payment of money from The Mill House Inn, which necessitated the commencement of an eviction proceeding to remove him from the premises.
>
> 44. There are no circumstances under which The Mill House Inn would ever allow a person who tries to extort money from it, and threatens it by using the name Theodore Kazinsky, or who might think that it is humorous or in any way appropriate to use that name, to be associated with it.
>
> 45. By reason of the foregoing, under all of the facts and circumstances the plainiff should be denied the relief demanded in the complaint.

Amended Answer, DE 5, ¶¶ 39-45 (alteration in original).

Plaintiff's memorandum of law in support of his Motion to Strike contains one paragraph of legal analysis in which Plaintiff characterizes the Sixth Affirmative Defense as "stream of consciousness rambling" and "scandalous and inflammatory rhetoric" and argues that it is a

legally insufficient defense because it is unconnected to Plaintiff's disability discrimination claims. *See* DE 8-1 at 5 .

In opposition, Defendant submits that there is a factual basis for the statements in the Sixth Affirmative Defense as evidenced by the Affidavit of Gary E. Muller, member of Cygnus Enterprises, LLC. Defendant further argues that the facts alleged in the Sixth Affirmative Defense preclude Plaintiff from the equitable relief of front pay and back pay he is seeking because courts may deny such relief if warranted by the plaintiff's post-termination misconduct. Defendant further argues that the allegations demonstrate Plaintiff's lack of credibility. *See* DE 9.

Plaintiff's reply memorandum does not discuss the substance of any of the arguments raised by Defendant, but rather reiterates the point made in his opening brief that the Sixth Affirmative Defense is not simple and concise. *See* DE 10.

## II.    LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure provides in pertinent part that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike affirmative defenses are generally disfavored and should not be granted unless there are strong reasons for doing so. *See Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015, 106 S. Ct. 3324 (1986); *Wireless Ink Corp. v. Facebook, Inc.*, 787 F. Supp. 2d 298, 314 (S.D.N.Y. 2011); *Coach, Inc. v. Kmart Corp.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010); *Dolan v. Fairbanks Capital Corp.*, No. 03-CV-3285, 2008 WL 451932, at *11 (E.D.N.Y. Sept. 30, 2008).

In order for a court to strike a defense as insufficient: "(1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense." *Coach*, 756 F. Supp. 2d at 425 (quotation omitted); *accord CFTC v. A.S. Templeton Group, Inc.*, 297 F. Supp. 2d 531, 533 (E.D.N.Y. 2003). Thus, a court must first determine whether the defense is insufficient and then determine whether the inclusion of the defense would prejudice the plaintiff. *Coach*, 756 F. Supp. 2d at 425-26.

A motion to strike on the grounds that material in a pleading is immaterial or impertinent should be denied unless the movant demonstrates that there is no evidence in support of the allegations that is admissible. *Ali v. New York City Transit Auth.*, 176 F.R.D. 68, 70 (E.D.N.Y. 1997) (denying motion to strike where movant did no more than state in conclusory language that the allegations were impertinent and immaterial).

## III. DISCUSSION

Although Plaintiff's sparse memorandum of law lacks clarity, the Court interprets it as arguing that the Sixth Affirmative Defense should be stricken because the defense is insufficient and also because the defense contains immaterial, impertinent, and scandalous material.

### A. Whether the Defense is Legally Insufficient

Defendant argues that the facts alleged in the Sixth Affirmative Defense may preclude Plaintiff from recovering front pay and back pay even if Plaintiff establishes Defendant's liability for violations of the ADA and NYSHRL. According to the Defendant, evidence of Plaintiff's wrongdoing, even post-termination wrongdoing, can preclude a plaintiff from receiving an award of front and back pay.

4

It is well-settled, under the doctrine of after-acquired evidence established by the Supreme Court in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 115 S.Ct. 879 (1995), that evidence of employee misconduct which occurred during the course of employment, but that was not discovered until after the employee was terminated, can limit the scope of relief. Defendant takes this holding a step further and argues that evidence of post-termination misconduct can also serve to limit a plaintiff's remedies. There is some support for this argument. In *Sellers v. Mineta*, 358 F.3d 1058, 1061-64 (8th Cir. 2004), the Eight Circuit held that a former employee's post-termination conduct is relevant to a court's fashioning of equitable relief. In that case, the court held that the employee's termination by her subsequent employer for processing a false loan application – a fact that the defendant argued rendered the plaintiff unsuitable for employment – could be considered in determining whether front pay should be awarded. *Id.* at 1060, 1062; *see also Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 555 (10th Cir. 1999) (holding that "we do not foreclose the possibility that in appropriate circumstances the logic of *McKennon* may permit certain limitations on relief based on post-termination conduct.\"), *cert denied,* 528 U.S. 813, 120 S. Ct. 48 (1999); *McKenna v. City of Philadelphia*, 636 F. Supp. 2d 446, 461 (holding that employee's post-termination marijuana conviction was relevant to determining his back pay damages, but declining to cut off back pay as a result of the conviction). Here, Defendant similarly argues that Plaintiff's post-termination misconduct consisting of threats and purported extortion rendered him unsuitable for employment at The Mill House Inn.[1]

---

[1] With the exception of the reference to the August 4, 2010 date that Plaintiff allegedly sent the e-mail signed by Theodore Kazinsky (which was after Plaintiff's termination), the dates of the other activities referenced in the Sixth Affirmative Defense are not specified. However, the

Whether post-termination misconduct can be used to limit equitable relief in the Second Circuit is less certain. At least one court in this Circuit has held that post-termination misconduct may not be considered in determining damages in a discrimination lawsuit. *See Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F. Supp. 667, 682-83 (S.D.N.Y. 1995). That case was decided over a decade ago; however, and the Second Circuit has not yet ruled on this issue. *See Sanders v. Madison Square Garden, L.P.*, No. 06-CV-589, 2007 WL 2245698, at *12 (S.D.N.Y. Aug. 6, 2007) ("The Second Circuit has never had occasion to decide whether post-employment misconduct can support an after-acquired evidence defense."), *withdrawn in part on other grounds*, 525 F. Supp. 2d 364 (S.D.N.Y. 2007). Although this Court is not entirely convinced that Ellis's post-termination activities can serve as a basis for limiting his equitable damages, the Court cannot affirmatively rule, given the lack of Second Circuit precedent, that there are no circumstances under which the defense could be successful.[2] In light of this information, a motion to strike is not the appropriate vehicle for determining disputed questions of fact and law in these specific circumstances. *See SEC v. Alexander*, 248 F.R.D. 108, 109 (E.D.N.Y. 2007); *Wyeth v. King Pharms.*, 396 F. Supp. 2d 280, 293 (E.D.N.Y. 2005). This is especially true where, as here, Plaintiff did not even discuss the legal viability of the defense.

---

Affidavit of Gary Muller states that the other activities (*i.e.*, threatening to file complaints with regulatory agencies and refusing to vacate the manager's residence at The Mill House Inn) allegedly occurred after Plaintiff was terminated. *See* Affidavit of Gary Muller in opposition to Motion to Strike ("Muller Aff.") [DE 9-1] ¶ 7.

[2] The Court notes that, as drafted, the Sixth Affirmative Defense purports to be a defense against all of the relief Plaintiff seeks, whereas, in their opposition to Plaintiff's motion to strike, Defendant only argues that it is a defense against Plaintiff's claims for front pay and back pay. The Court does not recommend requiring Defendant to amend its answer to reflect that the defense is not a complete one, but notes that Defendant has not demonstrated the sufficiency of the defense with respect to all of the relief sought by Plaintiff.

The Court is aware that the Sixth Affirmative Defense is not a traditional affirmative defense such as laches or waiver or the statute of limitations. Nevertheless, the definition of an affirmative defense in this Circuit is broad and includes any points a defendant wishes to make apart from the plaintiff's *prima facie* showing of liability. *Estate of Paulette Hamilton v. City of New York*, 627 F.3d 50, 57 (2d Cir. 1010) (noting that list of affirmative defenses in Federal Rule of Civil Procedure 8(c) are not exhaustive); *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (quoting the *Black's Law Dictionary* (7th ed. 1999) definition of an affirmative defense as "'a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true'"). Courts within the Second Circuit have not unanimously recognized the after-acquired evidence doctrine as an affirmative defense. *Compare Zubulake v. UBS Warburg LLC*, 231 F.R.D. 159, 160 (S.D.N.Y. 2005) (denying leave to amend answer to assert affirmative defense of after-acquired evidence) *with E.E.O.C. v. Morgan Stanley & Co., Inc.*, No. 01-CV-8421, 2002 WL 31778779, at *1 (S.D.N.Y. Dec. 11, 2002) (holding that after-acquired evidence was not necessarily an affirmative defense and the defendant did not need to amend its answer to assert it). The Court concludes that the conduct alleged in the Sixth Affirmative Defense falls within the definition of "affirmative defense" recognized by the Second Circuit since it is separate from Plaintiff's *prima facie* case. Moreover, courts do not generally strike material in an answer for the reason that it is not technically an affirmative defense, so long as no prejudice results. *See, e.g., Coach*, 756 F. Supp. 2d at 431 (collecting cases and refusing to strike defense that was actually a denial); *Oliner v. McBride's Indus., Inc.*, 106 F.R.D. 14, 20 n.7 (S.D.N.Y. 1985); *Saratoga Harness Racing Inc. v. Veneglia*, No. 94-CV-1400, 1997 WL 135946, at *7 (N.D.N.Y. March. 18, 1997).

In addition to failing to demonstrate that there are no issues of law, Plaintiff also fails to demonstrate that there are no questions of fact relating to the viability of the Sixth Affirmative Defense. In opposition to Plaintiff's Motion to Strike, Defendant submitted the Muller Affidavit in which Gary Muller, a principal of the Defendant, details the conduct described in the Sixth Affirmative Defense. Attached to the Muller Affidavit are various emails and letters which, if sent by Plaintiff, support the allegations in the Sixth Affirmative Defense. The Muller Affidavit and exhibits attached to it create issues of fact as to the validity of the Sixth Affirmative Defense. Even without the Muller Affidavit, the Court could not say that there are no issues of fact regarding the Sixth Affirmative Defense because Plaintiff did not submit any evidence to dispute the defense. Moreover, Plaintiff asserts no arguments attempting to demonstrate prejudice.

A brief discussion of Plaintiff's argument regarding the application of Federal Rule of Civil Procedure 8(d) is warranted here. Plaintiff cites this Court's decision in *Douyon v. NY Medical Health Care, P.C.*, No.10-3983, 2011 WL 1740630, at *3 (E.D.N.Y. May 4, 2011) and the Second Circuit's decision in *Salahuddin v. Cuomo*, 861 F. 2d 40, 42 (2d Cir. 1988) for the proposition that the Sixth Affirmative Defense does not comply with the requirement of Rule 8(d) that all averments in pleadings be simple and concise. Pl's. Reply Mem. at 2. Although it would have been helpful if the Sixth Affirmative Defense contained a reference to the legal principle articulated in Defendant's opposition memorandum, the Sixth Affirmative Defense gives Plaintiff sufficient notice of the theory Defendant is advancing, i.e., that Plaintiff "is not fit to be employed by [The Mill House Inn] under any circumstances," Amended Answer ¶ 39. The defense also sets forth the supporting factual basis for the underlying theory. The cases cited by Plaintiff do not require anything more than that.

For the reasons stated above, Plaintiff has not demonstrated the insufficiency of the Sixth Affirmative Defense because Plaintiff failed to show that there are no questions of law or fact that might allow the defense to proceed and has also failed to show any prejudice resulting from the inclusion of the defense. *See Coach*, 756 F. Supp. 2d at 425.[3]

### B. Whether the Defense Contains Immaterial, Impertinent, and Scandalous Material

Other than asserting conclusory characterizations of the Sixth Affirmative Defense as "rambling," "scandalous," and "unconnected" to Plaintiff's discrimination claim, etc., Plaintiff does not otherwise argue that the defense should be stricken on the grounds that it contains immaterial, impertinent, and scandalous material. *See* Pl.'s Mem. at 5. As explained in the foregoing section, however, the defense is material to Plaintiff's claim for equitable relief. Moreover, Defendant submitted evidence in support of the allegations through the Muller Affidavit. *See Ali*, 176 F.R.D. at 70 (a motion to strike on the grounds that material is immaterial or impertinent should be denied unless there is no evidence in support of the allegations). Further, Plaintiff's position that there is "no logical factual connection" between statements in the Sixth Affirmative Defense and Plaintiff's claims is undermined by the fact that Plaintiff filed a motion for summary judgment that is based in part on the allegations in the Sixth Affirmative

---

[3] The Court does not find persuasive Defendant's alternative argument, that the allegations in the Sixth Affirmative Defense should stand because they demonstrate that Plaintiff lacks credibility, *see* Def's. Mem. at 10-11. Credibility determinations are made at trial, not through pleadings.

Defense. *See* DE 21-2 at 1 ("Notwithstanding the pendency of Plaintiff's motion to strike, the content of Defendant's affirmative defenses also forms the basis of the instant motion . . . .").[4]

As to Plaintiff's assertion that the material is scandalous and inflammatory, the Court disagrees that the allegations in the Sixth Affirmative Defense rise to the level to justify a motion to strike the entire defense. However, the Court does find one exception. The language in paragraph 44 of the Amended Answer which suggests that Ellis is "a person who tries to extort money" is inflammatory and unnecessary. Paragraph 44 simply reiterates the combined allegations of paragraphs 42 and 43 of the Amended Answer and therefore is redundant and unwarranted. Morever, paragraph 44 states a legal conclusion based on facts that appear to be contested and are not in evidence at this time. The remainder of the allegations, although they do not portray Plaintiff in the most flattering light, are relevant to this case and should remain in the Amended Answer. *C.f. In re Crazy Eddie Sec. Litig.*, 747 F. Supp. 850, 864 (E.D.N.Y. 1990) (striking allegations in a complaint regarding the defendant's associations with organized crime figures and business and education failures that had nothing to do with the subject matter of the lawsuit).

## IV.   CONCLUSION

With the exception of paragraph 44 of the Amended Answer, Plaintiff has not met the high burden of demonstrating that the Sixth Affirmative Defense should be stricken. For the reasons set forth in this Report, it is my recommendation to District Judge Feuerstein that

---

[4]   In that motion, Plaintiff argues that admissions in the Amended Answer prove that Defendant treated Plaintiff differently on the basis of his disability.

Plaintiff's motion to strike should be GRANTED with respect to paragraph 44 and DENIED with respect to all other paragraphs of the Sixth Affirmative Defense.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Sandra D. Feuerstein, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
January 3, 2012

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge